1
2
3
4
5
6
7

Daniel Alberstone (SBN 105275)
dalberstone@baronbudd.com
Roland Tellis (SBN 186269)
rtellis@baronbudd.com
Mark Pifko (SBN 228412)
mpifko@baronbudd.com
Jonas P. Mann (SBN 263314)
BARON & BUDD, P.C.
15910 Ventura Boulevard, Suite 1600
Encino, California 91436
Telephone:   (818) 839-2333
Facsimile:   (818) 986-9698

8
9

Attorneys for Plaintiff Paul Hancock,
individually, and on behalf of other members
of the public similarly situated

10

## UNITED STATES DISTRICT COURT

11

## NORTHERN DISTRICT OF CALIFORNIA

12
13
14

PAUL HANCOCK, individually, and on
behalf of other members of the general
public similarly situated,

15

Plaintiff,

16

vs.

17
18

WELLS FARGO & COMPANY, a
Delaware corporation, and WELLS
FARGO BANK, N.A., a national
association,

19
20

Defendants.

Case Number:

**CLASS ACTION COMPLAINT FOR:**

(1)   Violations of the Racketeer
Influenced and Corrupt
Organizations Act (18 U.S.C. §
1962(c));

(2)   Violations of the Racketeer
Influenced and Corrupt
Organizations Act (18 U.S.C. §
1962(d));

21
22

(3)   Violations of California's Unfair
Competition Law (Cal. Bus. & Prof.
Code §§ 17200 *et seq.*);

23
24

(4)   Violations of Indiana's Deceptive
Consumer Sales Act (Ind. Code §§
24-5-0.5, *et seq.*);

25
26

(5)   Unjust Enrichment; and

(6)   Fraud

27

**Jury Trial Demanded**

28

For his Complaint against Defendants Wells Fargo & Company and Wells Fargo Bank, N.A. (collectively "Defendants" or "Wells Fargo"), Plaintiff Paul Hancock ("Plaintiff"), individually, and on behalf of all other members of the public similarly situated, based on information and belief, alleges as follows:

## NATURE OF THE ACTION

1.      For more than a decade, Defendants, together with auto insurance giant National General Insurance Company ("National General"), engaged in a scheme to bilk millions of dollars from unsuspecting customers who were forced to pay for auto insurance they did not need or want.  Following the shocking revelation that more than 800,000 auto loan customers paid for unnecessary auto insurance policies, pushing nearly 250,000 of them into delinquency and resulting in nearly 25,000 unlawful vehicle repossessions, Wells Fargo's spokesperson Jennifer A. Temple publicly stated, "We take full responsibility for these errors and are deeply sorry for any harm we caused customers." This lawsuit tests the truth of that statement and the depth of Wells Fargo's commitment to its customers.

2.      The fallout from Defendants' unlawful conduct is being felt nationwide by a customer base still reeling from an earlier scandal.  Just last year, Defendants reached a $185 million settlement with regulators over complaints that the Defendants' retail banking division secretly opened millions of credit card and bank accounts that customers had never requested.

3.       The auto loan customers impacted by Defendants' latest-revealed scheme sustained financial damages beyond the costs of the unlawful auto insurance.  The financial harm included inflated premiums, delinquency charges, late fees, repossession costs, increased interest rates, and damage to customers' credit reports.

4.      When confronted by the *New York Times*, Defendants scrambled to issue an eleventh-hour press release despite being aware of the scandal for at least a year.  The character of Defendants' senior management was once again tested, and once again it failed, choosing concealment over transparency.  Only after Defendants were forced to

comment before the *New York Times* story hit the newsstands, Franklin R. Codel, the head of consumer lending at Wells Fargo, essentially admitted that the reign of rampant misconduct at the bank's senior levels had not ended, stating, "We have a huge responsibility and fell short of our ideals for managing and providing oversight of the third-party vendor and our own operations."

5. The auto insurance policies at issue in this case are commonly referred to as Collateral Protection Insurance ("CPI") which are similar to auto insurance policies commonly taken out by vehicle owners to cover the cost of damage to the vehicle. Ordinarily, if proof of auto insurance was not received by Defendants' CPI provider, in this case National General, notices were required to be sent to borrowers in order to prompt them to obtain the required coverage. However, neither Defendants nor National General, which underwrote the CPI policies, checked their internal database to see if their customers had insurance coverage or, if they did, they simply ignored what they learned. Instead, Defendants imposed on customers redundant auto insurance coverage and then frequently without any notice, automatically deducted the cost of the CPI insurance from the customers' bank account along with the regularly scheduled principal and interest payment for the auto loan.

6. Not only were the CPI policies unnecessary, they were more expensive than the coverage borrowers obtained on their own. Additionally, Defendants received a kickback from National General in the form of shared commissions on each CPI policy, which provided the financial incentive to both Defendants and National General to unlawfully churn these unneeded and unwanted policies.

7. Compounding the shocking nature of the misconduct, Defendants' failure to properly disclose to their customers the unlawful CPI policies and/or the resulting automatic deductions from customers' bank accounts often put them in a financial tailspin.

8. These unlawful deductions resulted in account delinquencies, overdrawn payment accounts, increased interest rates, repossessed vehicles, and damage to

2

borrowers' credit.

9.    When borrowers, including Plaintiff, protested and informed Defendants that they did, in fact, maintain the required insurance and that the CPI was unnecessary, Defendants refused to remove the unlawful charges. Borrowers were forced to pay the charges in order to maintain their accounts in good standing, avoid further late fees and interest charges, and avoid repossession of their vehicles.

10.    This is a proposed class action brought by Plaintiff on behalf of all persons who obtained an auto loan from Defendants and who were required to pay for a CPI policy.  Plaintiff challenges, as further described herein, Defendants' practice of secretly imposing such CPI on their customers and automatically deducting the cost of the such insurance from their bank accounts.

11.    Defendants formed an unlawful enterprise with National General. When customers financed cars with Wells Fargo, the buyers' information was automatically sent by Wells Fargo to National General, which was supposed to check a database shared between Wells Fargo and National General, to see if the borrower had insurance coverage. If not, the insurer was required to send out notice to the borrower in order to prompt them to obtain the required coverage.  Despite these procedures, Defendants developed a uniform practice of automatically obtaining unnecessary and unlawful CPI policies and deducted the cost of the CPI policies (policy premiums and interest) automatically from their borrower' bank account.

12.    Defendants failed to properly disclose or provide any notice of the deductions for the CPI insurance policies resulting in borrowers' missed payments, late fees, account overdraft fees, higher interest rates, and even repossessed vehicles and damaged credit.

## JURISDICTION AND VENUE

13.   Jurisdiction is proper in this Court under 28 U.S.C. § 1332(d)(2).  The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which members of the class of plaintiff are citizens of states different from Defendants.  Further, greater than two-thirds of the members of the Class reside in states other than the states in which Defendants are a citizens.

14.   This Court also has jurisdiction over this matter under 28 U.S.C. §§ 1331, 1961, 1962 and 1964.  This Court has personal jurisdiction over Defendants under 18 U.S.C. §1965.  In addition, under 28 U.S.C. § 1367, this Court may exercise supplemental jurisdiction over the state law claims because all of the claims are derived from a common nucleus of operative facts and are such that Plaintiff ordinarily would expect to try them in one judicial proceeding.

15.   Venue lies within this judicial district under 28 U.S.C. § 1391(b)(1) because defendants Wells Fargo & Company and Wells Fargo Bank, N.A.'s principal place of business is in this District, and Defendants' contacts are sufficient to subject them to personal jurisdiction in this District, and therefore, Defendants reside in this District for purposes of venue, or under 28 U.S.C. § 1391(b)(2) because the acts giving rise to the claims at issue in this lawsuit occurred, among other places, in this District.

### Intradistrict Assignment

16.   Consistent with Northern District of California Civil Local Rule 3-5(b), assignment to the San Francisco or Oakland Division is appropriate under Civil Local Rules 3-2(c) and 3-2(d), because acts giving rise to the claims at issue in this lawsuit occurred, among other places, in this District, in the City of San Francisco.

## PARTIES

17.   Plaintiff Paul Hancock is an individual and a citizen of Indianapolis, Indiana.

18.   Defendant Wells Fargo & Company is a corporation organized under the laws of Delaware and headquartered in San Francisco, California.

19.   Defendant Wells Fargo Bank, N.A., is a subsidiary of Wells Fargo &

4

Company, and is a national bank organized and existing as a national association under the National Bank Act, 12 U.S.C. §§ 21 *et seq.*, with its principal place of business in San Francisco, California. [1]

20.    Whenever, in this Complaint, reference is made to any act, deed, or conduct of Defendants committed in connection with the enterprise, the allegation means that Defendants engaged in the act, deed, or conduct by or through one or more of their officers, directors, agents, employees or representatives, each of whom was actively engaged in the management, direction, control or transaction of the ordinary business and affairs of Defendants and the enterprise.

21.    Plaintiff is informed and believes, and based thereon, alleges that, at all material times herein, each Wells Fargo defendant, Wells Fargo & Company and Wells Fargo Bank, N.A. (collectively "Wells Fargo"), was the agent, servant, or employee of, and acted within the purpose, scope, and course of said agency, service, or employment, and with the express or implied knowledge, permission, and consent of the other Wells Fargo defendant, and ratified and approved the acts of the other Wells Fargo defendant.

22.    Wells Fargo & Company exercises specific and financial control over the operations of Wells Fargo Bank, N.A., and it dictates the policies and practices of Wells Fargo Bank, N.A.  Wells Fargo & Company also exercises power and control over the specific activities at issue in this lawsuit, and it is the ultimate recipient of the ill-gotten gains described herein.

---

[1] "Wells Fargo Bank, N.A.…has regularly described its principal place of business as San Francisco, California." *Mount v. Wells Fargo Bank, N.A.*, No. CV 08-6298GAF(MANX), 2008 WL 5046286, at *1 (C.D. Cal. Nov. 24, 2008) (citing *Wells Fargo Bank, N.A. v. Siegel*, 2007 WL 1686980 (N.D. Cal. June 8, 2007); *Jojola v. Wells Fargo Bank, N.A.*, 1973 WL 158166 (N.D. Cal. May 2, 1973)).

# **FACTUAL BACKGROUND**

23.    Defendants charged more than 800,000 of their borrowers for CPI auto insurance that they did not need or want, which Defendants failed to properly disclose. As a result, borrowers were unlawfully charged inflated CPI policy premiums and interest, late fees, and, in some cases, had their vehicles repossessed. Because of Defendants' unlawful acts, borrowers saw their bank accounts overdrawn, with unlawful fees assessed, and their credit scores damaged.

24.    Borrowers financed their vehicles through Defendants. Defendants provided the borrower's information to National General who was to then verify if the borrower had insurance coverage on the vehicle.

25.    If the borrower failed to provide proof of insurance, Defendants were required to send the borrower a request that he or she provide proof of insurance. However, Defendants and National General engaged in a practice of secretly and automatically imposing these CPI policies on borrowers who, in many instances, already had auto insurance. Thus, borrowers were paying premiums and interest on redundant CPI policies they did not need or request.

26.    Defendants failed to properly disclose both the CPI policies and their resulting charges to borrowers.

27.    Because the CPI insurance charges were not properly disclosed and unknown to borrowers, they often resulted in delinquencies in those cases where the borrower had insufficient funds to cover the cost of the CPI policy.  In turn, Defendants assessed late fees to borrowers' bank accounts and charges for insufficient funds.  These actions by Defendants not surprisingly resulted in damage to borrowers' credit reports as Defendants reported these delinquencies to credit reporting agencies.

28.     The CPI insurance policies coupled with Defendants' internal rules about the order in which payments are applied to a customer's account further exacerbated the problem. When Defendants receive a payment on an auto loan account, they applied it in the following order: interest on the auto loan, interest on the CPI insurance, principal on the auto loan, and then premium on the CPI policy.

29.     This order of payments resulted in both an increased amount of overall interest paid by borrowers and frequently overdrawn bank accounts and auto loan delinquencies.

30.     The extra, unexpected, and undisclosed additional expense pushed approximately 274,000 of Defendants' auto loan customers into delinquency resulting in almost 25,000 wrongly repossessed vehicles.

31.     Not only were the CPI insurance policies unnecessary, they were more expensive than the auto insurance policies customers had already obtained on their own.

32.     Unbeknownst to borrowers, Defendants obtained the policies through National General, who received a commission on the policies "sold" to borrowers, and Defendants even shared in the commissions with National General, further boosting their profits.

## PLAINTIFF'S ALLEGATIONS

33.     Plaintiff Paul Hancock purchased a vehicle from Hubler Ford in Shelbyville, Indiana in February 2016.

34.     Plaintiff financed the purchase of his vehicle with a loan from Wells Fargo.

35.     In May 2016, Wells Fargo placed a CPI policy on Plaintiff's auto loan account and charged him $598.00.

36.     Plaintiff repeatedly contacted Wells Fargo to inform them that he had the required insurance through an auto insurance policy from Allstate.

37.     Despite receiving this information, Wells Fargo did not credit Plaintiff's account for the unlawful charge or otherwise refund the amount charged that they had collected.  Indeed, Defendants continued to charge Plaintiff for the CPI policy.

38.     As a result of the increased CPI charges on his auto loan account, Plaintiff was charged a late fee immediately after the CPI policy was in place.

## STATUTE OF LIMITATIONS

39.     Any applicable statutes of limitations have been tolled by Defendants' knowing and active concealment, denial, and misleading actions, as alleged herein. Plaintiff and members of the Class, as defined below, were kept ignorant of critical information required for the prosecution of their claims, without any fault or lack of diligence on their part.  Plaintiff and members of the Class could not reasonably have discovered the true nature of the Defendants' force-placed insurance scheme.

40.     Defendants are under a continuous duty to disclose to Plaintiff and members of the classes the true character, quality, and nature of the charges they assess on borrowers' accounts.  Defendants knowingly, affirmatively, and actively concealed the true character, quality, and nature of their assessment of the CPI auto insurance premiums against borrowers' accounts.  Plaintiff and members of the Class reasonably relied upon Defendants' knowing, affirmative, and active concealment.  Based on the foregoing, Defendants are estopped from relying on any statutes of limitation as a defense in this action.

41.     The causes of action alleged herein did or will only accrue upon discovery of the true nature of the charges assessed against borrowers' accounts, as a result of Defendants' fraudulent concealment of material facts.  Plaintiff and members of the Class did not discover, and could not have discovered, through the exercise of reasonable diligence, the true nature of the unlawful fees assessed against their accounts.

## CLASS ACTION ALLEGATIONS

42.     Plaintiff bring this action, on behalf of themselves and all others similarly situated, as a class action under Rule 23 of the Federal Rules of Civil Procedure.

43.     The classes Plaintiff seek to represent are defined as follows:

**Nationwide Class**
All residents of the United States of America who obtained an auto loan through Wells Fargo Bank, N.A. or its subsidiaries or divisions, and who were assessed charges for CPI auto insurance.

**California State Class**
All residents of the State of California who obtained an auto loan through Wells Fargo Bank, N.A. or its subsidiaries or divisions, and who were assessed charges for CPI auto insurance.

**Indiana State Class**
All residents of the State of Indiana who obtained an auto loan through Wells Fargo Bank, N.A. or its subsidiaries or divisions, and who were assessed charges for CPI auto insurance.

44.     Plaintiff reserves the right to amend the Class definitions if discovery and further investigation reveals that the Class should be expanded or otherwise modified.

45.     Plaintiff reserves the right to establish sub-classes as appropriate.

46.     This action is brought and properly may be maintained as a class action under the provisions of Federal Rules of Civil Procedure 23(a)(1)-(4) and 23(b)(1), (b)(2) or (b)(3), and satisfies the requirements thereof.  As used herein, the term "Class Members" shall mean and refer to the members of the Class.

47.     <u>Community of Interest</u>:  There is a well-defined community of interest among members of the Class, and the disposition of the claims of these members of the Class in a single action will provide substantial benefits to all parties and to the Court.

48.     <u>Numerosity</u>:  While the exact number of members of the Class is unknown to Plaintiff at this time and can only be determined by appropriate discovery, membership in the Class is ascertainable based upon the records maintained by Defendants.  At this time,

Plaintiff is informed and believes that the Class includes approximately 800,000 members. Therefore, the Class is sufficiently numerous that joinder of all members of the Class in a single action is impracticable under Federal Rule of Civil Procedure Rule 23(a)(1), and the resolution of their claims through the procedure of a class action will be of benefit to the parties and the Court.

49.    Ascertainablity:  Names and addresses of members of the Class are available from Defendants' records.  Notice can be provided to the members of the Class through direct mailing, publication, or otherwise using techniques and a form of notice similar to those customarily used in consumer class actions arising under California state law and federal law.

50.    Typicality:  Plaintiff's claims are typical of the claims of the other members of the Class which he seeks to represent under Federal Rule of Civil Procedure 23(a)(3) because Plaintiff and each member of the Class has been subjected to the same unlawful, deceptive, and improper practices and has been damaged in the same manner thereby.

51.    Adequacy:  Plaintiff will fairly and adequately represent and protect the interests of the Class as required by Federal Rule of Civil Procedure Rule 23(a)(4). Plaintiff is an adequate representative of the Class, because they have no interests which are adverse to the interests of the members of the Class.  Plaintiff is committed to the vigorous prosecution of this action and, to that end, Plaintiff has retained counsel who are competent and experienced in handling class action litigation on behalf of consumers.

52.    Superiority: A class action is superior to all other available methods of the fair and efficient adjudication of the claims asserted in this action under Federal Rule of Civil Procedure 23(b)(3) because:

(a)    The expense and burden of individual litigation make it economically unfeasible for members of the Class to seek to redress their claims other than through the procedure of a class action.

(b)    If separate actions were brought by individual members of the Class, the resulting duplicity of lawsuits would cause members to seek to

redress their claims other than through the procedure of a class action; and

    (c)    Absent a class action, Defendants likely would retain the benefits of their wrongdoing, and there would be a failure of justice.

53.    Common questions of law and fact exist as to the members of the Class, as required by Federal Rule of Civil Procedure 23(a)(2), and predominate over any questions which affect individual members of the Class within the meaning of Federal Rule of Civil Procedure 23(b)(3).

54.    The common questions of fact include, but are not limited to, the following:

    (a)    Whether Defendants engaged in a pattern or practice of racketeering, as alleged herein;

    (b)    Whether Defendants engaged in unlawful, unfair, misleading, or deceptive business acts or practices in violation of California Business & Professions Code sections 17200 *et seq.*;

    (c)    Whether Defendants engaged in unfair, abuse, or deceptive acts, omissions, or practices in connection with a consumer transaction in violation of Indiana Code section 24-5-0.5, *et seq.*;

    (d)    Whether Defendants failed to properly disclose the CPI auto insurance;

    (e)    Whether Defendants' practice of charging CPI auto insurance premiums to borrowers, as alleged herein, is illegal;

    (f)    Whether Defendants were members of, or participants in the conspiracy alleged herein;

    (g)    Whether documents and statements provided to Plaintiff and members of the Class omitted material facts;

    (h)    Whether Plaintiff and members of the class sustained damages, and if so, the appropriate measure of damages; and

    (i)    Whether Plaintiff and members of the Class are entitled to an award of reasonable attorneys' fees, pre-judgment interest, and costs of this suit.

11

55.     In the alternative, this action is certifiable under the provisions of Federal Rule of Civil Procedure 23(b)(1) and/or 23(b)(2) because:

      (a)     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for Defendants;

      (b)     The prosecution of separate actions by individual members of the Class would create a risk of adjudications as to them which would, as a practical matter, be dispositive of the interests of the other members of the Class not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

      (c)     Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole and necessitating that any such relief be extended to members of the Class on a mandatory, class-wide basis.

56.     Plaintiff is not aware of any difficulty which will be encountered in the management of this litigation which should preclude its maintenance as a class action

## FIRST CAUSE OF ACTION

**Violations of the Racketeer Influenced and Corrupt Organizations Act
18 U.S.C. § 1962(c)
(On Behalf of the Nationwide Class)**

57.     Plaintiff incorporates by reference in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

58.     Plaintiff brings this cause of action on behalf himself and the members of the Nationwide Class.

## THE WELLS FARGO CPI ENTERPRISE

59.     Defendants Wells Fargo & Company and Wells Fargo Bank, N.A. and National General Insurance Company are all persons within the meaning of Title 18 United States Code section 1961(3).

60.     At all relevant times, in violation of Title 18 United States Code section 1962(c), Wells Fargo & Company, Wells Fargo Bank, N.A., and National General Insurance Company, including their directors, employees, and agents, conducted the affairs of an association-in-fact enterprise, as that term is defined in Title 18 United States Code section 1961(4) (the "Wells Fargo CPI Enterprise").  The affairs of the Wells Fargo CPI Enterprise affected interstate commerce through a pattern of racketeering activity.

61.     The Wells Fargo CPI Enterprise is an ongoing, continuing group or unit of persons and entities associated together for the common purpose of maximizing profits by unlawfully charging Wells Fargo's auto borrowers for unlawful, unnecessary, overpriced, and undisclosed collateral protection insurance policies.

62.     While the members of the Wells Fargo CPI Enterprise participate in and are part of the enterprise, they also have an existence separate and distinct from the enterprise. The Wells Fargo CPI Enterprise has a systematic linkage because there are contractual relationships, agreements, financial ties, and coordination of activities between Defendants and National General Insurance.

63.     As discussed above, operating the Wells Fargo CPI Enterprise according to Wells Fargo's policies and procedures, Defendants control and direct the affairs of the Wells Fargo CPI Enterprise and use the other members of the Wells Fargo CPI as instrumentalities to carry out Wells Fargo's fraudulent scheme.

64.     These policies and procedures established by Wells Fargo include having National General verify whether a borrower maintains the required insurance and underwriting a policy on behalf of the borrower, providing lending documents that fail to properly disclose the CPI insurance, providing statements that fail to properly disclose the CPI auto insurance premiums, and arranging the order of charges to borrower's accounts

to cause borrowers to become delinquent.

## THE PREDICATE ACTS

65.    Defendants' systematic schemes to unlawfully charge premiums, interest, and other charges for unnecessary CPI policies on the accounts of borrowers who have auto loans from Defendants, as described above, was facilitated by the use of the United States Mail and wire.  Defendants' schemes constitute "racketeering activity" within the meaning of Title 18 United States Code section 1961(1), as acts of mail and wire fraud, under Title 18 United States Code sections 1341 and 1343.

66.    In violation of Title 18 United States Code sections 1341 and 1343, Defendants utilized the mail and wire in furtherance of their scheme to defraud its auto loan customers by obtaining money from borrowers using false or fraudulent pretenses.

67.    Through the mail and wire, the Wells Fargo CPI Enterprise provided insurance policies, lending documents, auto loan statements, payoff demands, or proofs of claims to borrowers, demanding that borrowers pay CPI Auto insurance premiums and related charges.  Defendants also accepted payments and engaged in other correspondence in furtherance of their scheme through the mail and wire.

68.    The CPI auto insurance policies were unlawful and thus Defendants' representations that the premiums and related charged were owed were fraudulent and in communications to borrowers, Defendants made false statements using the Internet, telephone, facsimile, United States mail, and other interstate commercial carriers.

69.    Defendants' fraudulent statements were material to Plaintiff and the members of the Class.  Defendants represented that the CPI auto insurance charges were lawful and necessary and required for Plaintiff and members of the class to maintain their loan accounts in good standing and avoid further late fees and repossession of their vehicles.

70.    Each of these acts constituted an act of mail fraud for purposes of Title 18 United States Code section 1341.

71.    Additionally, using the Internet, telephone, and facsimile transmissions to fraudulently communicate false information about the premiums and fees to borrowers, to

pursue and achieve their fraudulent scheme, Defendants engaged in repeated acts of wire fraud in violation of Title 18 United States Code section 1343.

72.    In an effort to pursue their fraudulent scheme, Defendants knowingly fraudulently represented that the premiums and charges were owed.

73.    The predicate acts specified above constitute a "pattern of racketeering activity" within the meaning of Title 18 United States Code section 1961(5) in which Defendants have engaged under Title 18 United States Code section 1962(c).

74.    All of the predicate acts of racketeering activity described herein are part of the nexus of the affairs and functions of the Wells Fargo CPI Enterprise racketeering enterprise.  The racketeering acts committed by the Wells Fargo CPI Enterprise employed a similar method, were related, with a similar purpose, and they involved similar participants, with a similar impact on the members of the Class.  Because this case is brought on behalf of a class of similarly situated borrowers and there are numerous acts of mail and wire fraud that were used to carry out the scheme, it would be impracticable for Plaintiff to plead all of the details of the scheme with particularity.  Plaintiff cannot plead the precise dates of all of Defendants' uses of the mail and wire because this information cannot be alleged without access to Defendants' records.

75.    The pattern of racketeering activity is currently ongoing and open-ended, and threatens to continue indefinitely unless this Court enjoins the racketeering activity.

76.    Numerous schemes have been completed involving repeated unlawful conduct that by its nature, projects into the future with a threat of repetition.

77.    As a direct and proximate result of these violations of Title 18 United States Code sections 1962(c) and (d), Plaintiff and members of the class have suffered substantial damages.  Defendants are liable to Plaintiff and members of the Class for treble damages, together with all costs of this action, plus reasonable attorney's fees, as provided under Title 18 United States Code section 1964(c).

## SECOND CAUSE OF ACTION

**Violation of the Racketeer Influenced and Corrupt Organizations Act,
Conspiracy to Violate Title 18 United States Code section 1962(c)
18 U.S.C. § 1962(d)
(On Behalf of the Nationwide Class)**

78.     Plaintiff incorporates by reference in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

79.     Plaintiff brings this cause of action on behalf of himself and the members of the Nationwide Class.

80.     As set forth above, in violation of Title 18 United States Code section 1962(d), Wells Fargo & Company and Wells Fargo Bank, N.A. conspired to violate the provisions of Title 18 United States Code section 1962(c).

81.     As set forth above, Defendants, having directed and controlled the affairs of the Wells Fargo CPI Enterprise, were aware of the nature and scope of the enterprise's unlawful scheme, and they agreed to participate in it.

82.     As a direct and proximate result, Plaintiff and the members of the Class have been injured in their business or property by the predicate acts which make up Defendants' patterns of racketeering activity in that unlawful force-placed insurance premiums were assessed on their auto loan accounts.

## THIRD CAUSE OF ACTION

**Violation of Unfair Business Practices Act
California Business & Professions Code §§ 17200 *et seq.*
(On Behalf of the California State Class)**

83.     Plaintiff incorporates by reference in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

84.     Plaintiff brings this cause of action on behalf of himself and the members of the California State Class.

85.    California Business and Professions Code section 17200 prohibits "any unlawful, unfair or fraudulent business act or practice."  For the reasons described above, Defendants have engaged in unfair, or fraudulent business acts or practices in violation of California Business and Professions Code sections 17200 *et seq.*

86.    Defendants' charging Plaintiff and class members for unnecessary and unrequested CPI auto insurance policies, fraudulent statements regarding the charges, and omissions of material facts, as set forth herein, all constitute unlawful practices because they violate, *inter alia*, Title 18 United States Code sections 1341, 1343, and 1962; California Civil Code sections 1572, 1573, 1709, 1710, and 1711; and the common law.

87.    Defendants' charging Plaintiff and class members for unnecessary and unrequested force-placed insurance policies, fraudulent statements regarding the charges, and omissions of material facts, as set forth herein, also constitute "unfair" business acts and practices within the meaning of California Business and Professions Code sections 17200 *et seq.*, in that Defendants' conduct was injurious to consumers, offended public policy, and was unethical and unscrupulous.  Defendants' violation of California's consumer protection and unfair competition laws in California resulted in harm to consumers.

88.    There were reasonable alternatives available to Defendants to further Defendants' legitimate business interests, other than the conduct described herein.

89.    California Business and Professions Code section 17200 also prohibits any "fraudulent business act or practice."  Defendants' Defendants' charging Plaintiff and class members for unnecessary and unrequested CPI auto insurance policies, fraudulent statements regarding the charges, and omissions of material facts, as set forth above, was false, misleading, or likely to deceive the public within the meaning of California Business and Professions Code section 17200.  Defendants' conduct and statements were made with knowledge of their effect, and was done to induce Plaintiff and members of the Class to pay the CPI auto insurance premiums.

90.    Plaintiff relied on the reasonable expectation that Defendants comply with

17

the law. Plaintiff and members of the class relied on Defendants' representations that the charges were lawful and necessary and required to maintain their loans in good standing and avoid repossession of their vehicles.

91.    Plaintiff and members of the Class have been injured in fact and suffered a loss of money or property as a result of Defendants' fraudulent, unlawful, and unfair business practices.

92.    Defendants have thus engaged in unlawful, unfair, and fraudulent business acts entitling Plaintiff and members of the Class to judgment and equitable relief against Defendants, as set forth in the Prayer for Relief.

93.    Additionally, under Business and Professions Code section 17203, Plaintiff and members of the Class seek an order requiring Defendants to immediately cease such acts of unlawful, unfair, and fraudulent business practices, and requiring Defendants to correct their actions.

## FOURTH CAUSE OF ACTION

### Violations of the Indiana Deceptive Consumer Sales Act

### Ind. Code 24-5-05, *et seq.*

### (On Behalf of the Indiana State Class)

94.    Plaintiff incorporates by reference in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

95.    Plaintiff brings this cause of action on behalf of himself and the Indiana State Class against Defendants.

96.    Plaintiff is a person, Defendants are suppliers, and Plaintiff's auto loan is a consumer transaction within the meaning of Ind. Code 24-5-0.5-3.

97.    The Indiana Deceptive Consumer Sales Act prohibits unfair, abusive, or deceptive acts, omissions, and practices in connection with a consumer transaction.

98.    Defendants' conduct in charging Indiana State Class Members for the unnecessary, overpriced CPI auto insurance policies constitutes an unfair, abusive, and deceptive act and practice.

99.    In the course of their business, Defendants concealed and suppressed material facts concerning the CPI auto insurance. Defendants failed to properly disclose the policies and failed to disclose the policies were unnecessary and unlawful.

100.    Plaintiff and class members relied on Defendants' fraudulent representations that the CPI auto insurance charges were lawful and necessary and required to maintain their accounts in good standing and avoid repossession of their vehicles.

101.    Plaintiff and class members were damaged by paying for unlawful premiums and other charges related to the CPI auto insurance policies.

102.    Defendants' conduct is an incurable deceptive act because it was done as part of a scheme with intent to defraud and mislead.

## FIFTH CAUSE OF ACTION

### Unjust Enrichment

103.    Plaintiff incorporates by reference in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

104.    Plaintiff brings this cause of action on behalf of himself and the members of each of the Classes.

105.    By their wrongful acts and omissions of material facts, Defendants were unjustly enriched at the expense of Plaintiff and members of the Class.

106.     Thus, Plaintiff and members of the Class were unjustly deprived.

107.    It would be inequitable and unconscionable for Defendants to retain the profit, benefit and other compensation they obtained from their fraudulent, deceptive, and misleading conduct alleged herein.

108.    Plaintiff and members of the Class seek restitution from Defendants, and seek an order of this Court disgorging all profits, benefits, and other compensation

obtained by Defendants from their wrongful conduct.

## SIXTH CAUSE OF ACTION

### Fraud

109. Plaintiff incorporates by reference in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

110. Plaintiff brings this cause of action on behalf of himself and the members of each of the Classes.

111. Defendants concealed and suppressed material facts, namely, that the CPI auto insurance policies were unlawful and unnecessary. In truth and in fact, borrowers were not obligated to pay for the CPI auto insurance policies or the inflated premiums, late fees and other expenses that resulted. Contrary to Defendants' communications, Defendants were not legally authorized to assess and collect these charges and fees.

112. Plaintiff and class members relied on Defendants' representations that the CPI auto insurance charges were lawful and necessary and required to maintain their accounts in good standing and avoid repossession of their vehicles.

113. Defendants knew their unnecessary CPI auto insurance policies were unlawful and their concealment and suppression of materials facts relating to those polices was false, misleading, and unlawful.

114. As a result of Defendants' fraudulent conduct, Plaintiff and members of the Class have been injured in fact and suffered a loss of money or property. Plaintiff and members of the Class paid for the CPI auto insurance policies and other fees as a result of Defendants' conduct.

115. Defendants omitted and concealed material facts, as discussed above, with knowledge of the effect of concealing of these material facts. Defendants knew that by misleading consumers, they would generate higher profits.

116. Plaintiff and members of the Class justifiably relied upon Defendants' knowing, affirmative, and active concealment. By concealing material information about

20

their scheme to assess undisclosed insurance premium fees on borrowers' accounts, Defendants intended to induce Plaintiff and members of the Class into believing that they owed Defendants money that Defendants were not actually entitled.  Moreover, in many instances, the amount necessary to cover the premium and interest for the policy was automatically deducted from the borrowers' bank account without the borrowers' knowledge.

117.   Defendants acted with malice, oppression, or fraud.

118.   As a direct and proximate result of Defendants' conduct and omissions and active concealment of material facts, Plaintiff and each member of the Class has been damaged in an amount according to proof at trial.

## PRAYER FOR RELIEF

Plaintiff, and on behalf of himself and all others similarly situated, request the Court to enter judgment against Defendants, as follows:

119.   Certifying the Classes, as requested herein, certifying Plaintiff as the representatives of the Classes, and appointing Plaintiff's counsel as counsel for the Classes;

120.   Ordering that Defendants are financially responsible for notifying all members of the Classes of the alleged omissions discussed herein;

121.   Awarding Plaintiff and the members of the Classes compensatory damages in an amount according to proof at trial;

122.   Awarding restitution and disgorgement of Defendants' revenues and/or profits to Plaintiff and members of the Classes;

123.   Awarding Plaintiff and the members of the Classes treble damages in an amount according to proof at trial;

124.   Awarding declaratory and injunctive relief as permitted by law or equity, including:  enjoining Defendants from continuing the unlawful practices as set forth herein, and directing Defendants to identify, with Court supervision, victims of its conduct and pay them restitution and disgorgement of all monies acquired by Defendants by

means of any act or practice declared by this Court to be wrongful;

125.    Ordering Defendants to engage in corrective advertising;

126.    Awarding interest on the monies wrongfully obtained from the date of collection through the date of entry of judgment in this action;

127.    Awarding attorneys' fees, expenses, and recoverable costs reasonably incurred in connection with the commencement and prosecution of this action; and

128.    For such other and further relief as the Court deems just and proper.

Dated:  July 30, 2017                               BARON & BUDD, P.C.


                                    By:  _____/s/ Roland Tellis_____
                                         Roland Tellis

                                    Daniel Alberstone (SBN 105275)
                                    Roland Tellis (SBN 186269)
                                    Mark Pifko (SBN 228412)
                                    Jonas P. Mann (SBN 263314)
                                    BARON & BUDD, P.C.
                                    15910 Ventura Boulevard, Suite 1600
                                    Encino, California  91436
                                    Telephone:   (818) 839-2333
                                    Facsimile:    (818) 986-9698

                                    Attorneys for Plaintiff Paul Hancock, individually, and on behalf of other members of the public similarly situated

CLASS ACTION COMPLAINT

1

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial of their claims by jury to the extent authorized by

law.

Dated:  July 30, 2017

BARON & BUDD, P.C.

By: ___/s/ *Roland Tellis*_____
        Roland Tellis

Daniel Alberstone (SBN 105275)
Roland Tellis (SBN 186269)
Mark Pifko (SBN 228412)
Jonas P. Mann (SBN 263314)
BARON & BUDD, P.C.
15910 Ventura Boulevard, Suite 1600
Encino, California  91436
Telephone:   (818) 839-2333
Facsimile:   (818) 986-9698

Attorneys for Plaintiff Paul Hancock,
individually, and on behalf of other
members of the public similarly situated

CLASS ACTION COMPLAINT